BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE INVESTORS FUNDING CORPORATION ) DOCKET NO. 290
OF NEW YORK SECURITIES LITIGATION   )

OPINION AND ORDER

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER*, JOSEPH S. LORD, III*, STANLEY A. WEIGEL*, AND ANDREW A. CAFFREY, JUDGES OF THE PANEL

PER CURIAM

This litigation consists of seven actions pending in five federal districts -- three in the Southern District of New York and one each in the Northern District of Illinois, the Northern District of Ohio, the Eastern District of Virginia and the District of the District of Columbia. The actions center around the investment activities of Investors Funding Corporation of New York, Investors Funding Collateral Corporation and a number of related corporations (collectively referred to as IFC). The principal business of IFC, prior to its entrance into bankruptcy proceedings during October 1974, was the purchase and sale of real property, the making of mortgage loans, and participation in other real estate related transactions.

Bloor, one of the actions pending in the Southern District of New York, was brought under the federal securities laws and the bankruptcy laws, inter alia, by the trustee in bankruptcy for

---

* Judges Becker, Lord and Weigel took no part in the consideration or decision of this matter.

IFC against nearly 200 named defendants and 24 "Doe" defendants. Included as defendants are the officers and directors of IFC; the trustees of IFC's profit sharing plan; attorneys, accountants and appraisers of real estate for IFC; several real estate ventures and the participants in those ventures; several banks; over 100 alleged recipients of voidable fraudulent transfers of IFC's assets; and 22 alleged recipients of voidable preferential transfers of IFC's assets. Bloor is also brought against separate purported defendant classes consisting of the partners in two of the defendant accounting firms or various participants in the named real estate ventures. The complaint in Bloor contains allegations concerning a wide variety of activities of the different defendant groups. The officers, directors, attorneys, accountants and appraisers are alleged to have participated in a scheme through which the assets and profits of IFC were overstated and the liabilities and losses of IFC were understated, thereby allowing profits to be reported when none were earned and presenting the creditors of IFC and investors in IFC with a false and misleading impression of the financial condition of IFC. The officers and directors allegedly engaged in a series of sham transactions and purchase and buy-back agreements designed to inflate falsely the assets and profits of IFC. The appraisers allegedly predicted income figures for properties of IFC that were significantly higher than realistically might be

expected and predicted unreasonably low expenses for the properties. The defendant banks, which are creditors of IFC, allegedly concealed certain inside information about IFC's financial condition and used that information to their benefit and to the detriment of the other creditors of IFC and the public. Fourteen of the fifteen original bank defendants are alleged to have collectively entered into certain credit and security agreements with IFC through which unsecured loans made to IFC by the banks were converted to secured loans, thereby giving the banks a position superior in interest to that of other creditors of IFC. These fourteen banks and one of the principals of IFC are also alleged to have entered into a secret verbal agreement which required proceeds from the sale of properties by IFC to be paid to the banks to reduce the loans outstanding rather than be reinvested by IFC in other properties, thereby resulting in a secret liquidation of the assets of IFC for the benefit of the banks. Several defendants, including many of the defendant real estate ventures and the participants in those ventures, are alleged to have participated in voidable fraudulent transfers of real property or other assets of IFC, to the financial detriment of IFC. Other defendants are alleged to have received transfers of the assets of IFC which are voidable preferences. The trustee asks for damages and the return of all assets of IFC that were transferred in voidable transactions.

Katz was instituted in the Southern District of New York under the federal securities laws, inter alia, as a class action on behalf of all purchasers of IFC common stock during the period from December 31, 1967 to October 21, 1974. Many of the same individuals or organizations that are named as defendants in Bloor are named as defendants in Katz. Plaintiffs in Katz allege that defendants participated in fraudulent activities and the issuance of false and misleading statements which impaired the value of plaintiffs' investments in IFC. The specific activities in question include sham transactions at year's end to improve artificially IFC's balance sheet and income statement, purchase and buy-back transactions at inflated prices, and overstatement and misappropriation of IFC's assets.

Morse, the third action pending in the Southern District of New York, was brought under the federal securities laws, inter alia, as a class action on behalf of purchasers of certain IFC debentures during the period from July 28, 1972 to October 21, 1974. Defendants in this action are individual officers and directors of IFC, IFC's accountants, and three underwriters of IFC securities. The substantive allegations of fact in Morse are very similar to those made in Katz.

The four actions pending in districts other than the Southern District of New York (the bank actions) were each instituted by the trustee in bankruptcy for IFC against a single

national bank. These four national banks were originally among the fifteen banks named as defendants in <u>Bloor</u>, but each of the four have since been dismissed or have made motions for dismissal from that action under the venue provision of the National Bank Act, 12 U.S.C. §94. The original complaints in the bank actions were identical to the complaint in <u>Bloor</u>. Subsequently, substantially amended complaints have been filed in the Virginia, Illinois and Ohio actions. The amended complaints in the Virginia and Illinois actions are brought under the federal securities laws and the bankruptcy laws, <u>inter alia</u>. The allegations which are made against the defendant bank in each of those two complaints are essentially the same as the allegations which are made against the bank defendants in the complaint in <u>Bloor</u>. The amended complaint in the Ohio action is brought under the bankruptcy laws, <u>inter alia</u>. In that complaint, the trustee alleges that the defendant, First National Bank of Akron (Akron bank), caused a fraudulent transfer of certain funds of IFC to be made to the bank when the bank offset funds on deposit with it against the balance due on unsecured loans taken out by IFC. The trustee alleges that the Akron bank was in possession of confidential inside information concerning the financial condition of IFC when the transfer was made and that the transfer was made with the intent to hinder and defraud existing and future creditors of IFC. The trustee requests that the transfer be voided and that the claims of the Akron bank be subordinated to the claims of other creditors of IFC.

Plaintiff in <u>Bloor</u> and the four bank actions moves the Panel, pursuant to 28 U.S.C. §1407, to transfer the foregoing actions pending in districts other than the Southern District of New York to that district for coordinated or consolidated pretrial proceedings with the three actions pending there.[1] Twelve defendant banks oppose transfer. We find that these actions involve common questions of fact and that their transfer to the Southern District of New York pursuant to Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.

Several of the defendant banks contend, in opposition to transfer, that the four bank actions which are pending in districts other that the Southern District of New York are distinct from the actions pending in that district. <u>Katz</u> and <u>Morse</u>, the banks maintain, involve no issues in common with the claims against the banks. The complaint in <u>Bloor</u>, they assert, attempts to combine numerous claims against many unrelated defendants in a single action. The banks stress that the claims in <u>Bloor</u> concerning the massive fraud perpetrated by the principals of IFC are distinct from the claims made against each bank for the return of certain voidable preferences which were received in a small number of transactions. The banks assert

---

[1] Plaintiff's motion originally included another action, <u>Bloor, et al. v. Dansker, et al.</u>, S.D.N.Y., 69-Civ-2741, but at the Panel hearing on this motion, plaintiff apparently retreated from including this action in the motion. Transcript at 2-3. Plaintiff advised the Panel that this action "has been, for all intents and purposes, settled." <u>Id.</u> at 3. No party disputed plaintiff's characterization of this action. Accordingly, we deem this action withdrawn from plaintiff's motion.

that the vast majority of the issues involved in the New York actions are irrelevant to the banks. The minimal common aspects which are involved, the banks argue, are far outweighed by the predominance of unique issues among the actions.

Defendant Akron bank stresses, in opposition to transfer of the Ohio action, that the Akron bank is not alleged to have been a party to the security agreements which were executed by the other banks. The Akron bank states that claims against it are asserted only in connection with its offset of certain funds on deposit from IFC against loans outstanding to IFC. Therefore, the Akron bank contends, discovery in the Ohio action will relate only to the offset transaction, and will not involve the myriad of issues covered by the other actions.

We find these arguments unpersuasive. On the basis of the record before us, all seven actions, including the Akron bank action, involve substantial common questions of fact concerning the financial condition of IFC. In addition, Bloor and the Virginia, Illinois and District of Columbia bank actions share questions of fact concerning the alleged collective activities of the banks and others in regard to IFC and the effect of those activities upon IFC, other creditors of IFC and other interested persons. Transfer under Section 1407 will therefore eliminate duplicative discovery, avoid the possibility of conflicting pretrial rulings and conserve judicial effort. Discovery on any issues that are unique to a particular action may be scheduled by the transferee judge to proceed concurrently

with the common pretrial matters. See In re Republic National-Realty Equities Securities Litigation, 382 F. Supp. 1403, 1405-06 (J.P.M.L. 1974).

The defendant banks argue that the venue provision of the National Bank Act, 12 U.S.C. §94, prohibits the transfer pursuant to 28 U.S.C. §1407 for coordinated or consolidated pretrial proceedings of actions in which national banks are defendants. One bank maintains that Section 94 requires all proceedings against a national bank, trial as well as pretrial, to take place within the bank's home district. The banks stress that Section 94 was enacted for the convenience of the national banks to protect them from having to move their records outside their home districts. This policy of the Act, they assert, as discussed in the recent United States Supreme Court case of Radzanower v. Touche Ross & Co., 426 U.S. 148 (1976), would be violated by transferring the actions against the banks for pretrial purposes. The banks urge that, with respect to the four actions in which national banks are defendants, the motion before the Panel is in reality an attempt to circumvent the venue restrictions of the National Bank Act. They contend that movant is attempting to misuse Section 1407, citing In re Highway Accident Near Rockville, Connecticut, 388 F. Supp. 574, 576 (J.P.M.L. 1975) and In re Truck Accident Near Alamagordo, New Mexico, 387 F. Supp. 732, 734 (J.P.M.L. 1975), and they request that the Panel accordingly deny transfer in this litigation. If the Panel determines that transfer under Section 1407 is not restricted by the venue provision of the

National Bank Act, the banks urge the Panel nevertheless to give deference to the policy behind that venue provision by denying transfer.

In response to similar arguments opposing the transfer of actions in which national banks are defendants, the Panel has ruled as follows:

> We see no reason, including anything in Radzanower, to exempt actions involving national banks from transfer under Section 1407. In considering transfer under Section 1407, the Panel is not encumbered by considerations of venue, including those under 12 U.S.C. §94. In re Great Western Ranches Litigation, 369 F. Supp. 1406, n. 1 (J.P.M.L. 1974). The fact that defendants may not all be amenable to suit in the same jurisdiction does not prevent transfer of the actions against them to a single district for pretrial proceedings where the prerequisites of Section 1407 are otherwise satisfied. In re Kauffman Mutual Fund Actions, 337 F. Supp. 1337, 1339 (J.P.M.L. 1972). Indeed, 28 U.S.C. §1407(a) states that "actions may be transferred to any district for coordinated or consolidated pretrial proceedings." (Emphasis added.) The legislative history of Section 1407 is also instructive on this point. In re Plumbing Fixture Cases, 298 F. Supp. 484, 499-500 (J.P.M.L. 1968). The recent Radzanower opinion by the Supreme Court has no effect on transfers under Section 1407 because the opinion deals exclusively with the question whether the venue provision of the National Bank Act or the venue provision of the Securities Exchange Act controls in the event a national banking association is sued in a federal court for allegedly violating the Securities Exchange Act.
>
> Furthermore, we see no reason to accord national banks any special treatment in considering transfer of actions under Section 1407. The Panel's statutory mandate is to weigh the interests of all the plaintiffs and all the defendants, and to consider multidistrict litigation as a whole in light of the purposes of the law. In re Library Editions of Children's Books, 297 F. Supp. 385, 386 (J.P.M.L. 1968).
>
> We emphasize that defendant national banks need not worry about a transferee court's entering an order requiring that their documents be moved outside their home districts for trial because transfers under Section 1407 are for pretrial only and the actions against them will be remanded to their home districts for trial. See Rule 11, R.P.J.P.M.L., 65 F.R.D. 253, 260-63 (1975). Moreover, we note that transfer of an action under Section 1407 does not mean that

all discovery must take place in the transferee district. For example, depositions of witnesses may still occur where they reside, see Fed. R. Civ. P. 45(d)(2), and of course any party may request an order from the transferee court that its documents be inspected at its offices or at another convenient location in or near the city in which it is located, see Manual for Complex Litigation, Part I, §2.50 (rev. ed. 1973).

The defendant banks' reliance on In re Highway Accident Near Rockville, Connecticut, supra, and In re Truck Accident Near Alamagordo, New Mexico, supra, in suggesting that plaintiffs . . . are attempting to misuse Section 1407 in seeking transfer is misplaced. Those two litigations did not otherwise meet the standards for transfer under Section 1407, in contrast to the litigation now before us. Here significant benefits are to be gained by coordinated or consolidated pretrial proceedings. In re Falstaff Brewing Corporation Antitrust Litigation, ___ F. Supp. ___, ___ (J.P.M.L., filed June 3, 1977).

This reasoning is equally dispositive of the arguments of the defendant national banks in the litigation now before us.

The Southern District of New York is clearly the most appropriate transferee forum for this litigation. Investors Funding Corporation of New York and Investors Funding Collateral Corporation are headquartered within that district and therefore many of the relevant documents and witnesses are located in the New York vicinity. See In re U.S. Financial Securities Litigation, 375 F. Supp. 1403, 1404 (J.P.M.L. 1974). In addition, three of the seven actions involved here are already pending in the Southern District of New York. See In re Joseph F. Smith Patent Litigation, 407 F. Supp. 1403, 1405 (1976).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the actions listed on the following Schedule A and pending in districts other than the Southern District of New York be, and the same hereby are, transferred to the Southern District of

New York and, with the consent of that court, assigned to the Honorable William C. Conner for coordinated or consolidated pretrial proceedings with the actions listed on Schedule A and pending in that district.

## Schedule A

Docket No. 290

| DISTRICT OF COLUMBIA | Civil Action No. |
|---|---|
| James Bloor, etc. v. Riggs National Bank | 76-1958 |

### NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| James Bloor, etc. v. First National Bank of Chicago | 76-C-3905 |

### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| James Bloor, etc. v. Jerome Dansker, et al. | 76-Civ-4679 (WCC) |
| Morris Katz, et al. v. Jerome Dansker, et al. | 76-Civ-4721 (WCC) |
| Robert Morse, et al. v. Peat Marwick Mitchell & Co., et al. | 75-Civ-3681 (WCC) |

### NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| James Bloor, etc. v. First National Bank of Akron | C-76-336A |

### EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| James Bloor, etc. v. Virginia National Bank | 76-639-N |

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

IN RE INVESTORS FUNDING CORPORATION OF  )  DOCKET NO. 290
NEW YORK SECURITIES LITIGATION           )

CONCURRING OPINION

EDWARD WEINFELD, JUDGE OF THE PANEL, WITH WHOM JOHN MINOR WISDOM, CHAIRMAN OF THE PANEL, JOINS,

I concur in the decision of my brethren that the actions before us pending in districts other than the Southern District of New York should, pursuant to 28 U.S.C. §1407, be transferred to that district for coordinated or consolidated pretrial proceedings with the actions pending there. I also agree with my brethren that the venue provision of the National Bank Act, 12 U.S.C. §94, does not prohibit transfer under Section 1407 of actions in which national banks are parties. Unlike my brethren, however, I am of the view that the Panel should adopt as policy the Supreme Court's recent recognition in <u>Radzanower v. Touche Ross & Co.</u>, 426 U.S. 148 (1976), that the purpose of 12 U.S.C. §94 was to prevent interruption in the business of national banks that might result from their records being sent to distant counties, 426 U.S. at 156. Accordingly, I would include in the Panel's transfer order in this litigation a provision that with respect to the national bank defendants any discovery or inspection of their records shall be had only in each bank's home district.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION
FILED

DEC -1 1978

PATRICIA D. HOWARD
CLERK OF THE PANEL

BEFORE THE JUDICIAL PANEL
ON
MULTIDISTRICT LITIGATION

In re Investors Funding Corporation ) Docket No. 290
of New York Securities Litigation )
)
James Bloor v. Federal Deposit Insurance )
Corporation, E.D. New York, C.A. No. 78C565 )

12/1/78

OPINION AND ORDER
_____

BEFORE JOHN MINOR WISDOM, CHAIRMAN, AND EDWARD WEINFELD,
EDWIN A. ROBSON, STANLEY A. WEIGEL, ANDREW A. CAFFREY, AND
ROY W. HARPER, JUDGES OF THE PANEL.

PER CURIAM

The Panel, pursuant to 28 U.S.C. §1407, previously centralized several actions in this litigation in the Southern District of New York before the Honorable William C. Conner for coordinated or consolidated pretrial proceedings. In re Investors Funding Corporation of New York Securities Litigation, 437 F.Supp. 1199 (J.P.M.L. 1977) (MDL-290 actions). The MDL-290 actions center around the investment activities of Investors Funding Corporation of New York, Investors Funding Collateral Corporation and a number of related corporations (collectively referred to as IFC). The principal business of IFC, prior to its entrance into bankruptcy proceedings during October 1974,[1/] was the purchase and sale of real property, the making of mortgage loans, and participation in other real estate related transactions. Plaintiff in one of the MDL-290 actions originally filed in the transferee district (Bloor) is the trustee in bankruptcy for IFC. Claims are made in that action

---

1/ Those proceedings are pending before the Honorable Dudley B. Bonsal in the Southern District of New York.

-2-

under the federal securities laws and the bankruptcy laws, inter alia, against a wide variety of defendants, including several national banks. The allegations against the national banks in Bloor are as follows:

> The defendant banks, which are creditors of IFC, allegedly concealed certain inside information to their benefit and to the detriment of the other creditors of IFC and the public. Fourteen of the fifteen original bank defendants are alleged to have collectively entered into certain credit and security agreements with IFC through which unsecured loans made to IFC by the banks were converted to secured loans, thereby giving the banks a position superior in interest to that of other creditors of IFC. These fourteen banks and one of the principals of IFC are also alleged to have entered into a secret verbal agreement which required proceeds from the sale of properties by IFC to be paid to the banks to reduce the loans outstanding rather than be reinvested by IFC in other properties, thereby resulting in a secret liquidation of the assets of IFC for the benefit of the banks.

Id. at 1200.

On January 31, 1978, upon the motion of the trustee, the claims in Bloor against the Federal Deposit Insurance Corporation (FDIC) as receiver for Franklin National Bank (Franklin) were severed by the transferee judge and transferred to the Eastern District of New York pursuant to 28 U.S.C. §1404(a).[2/] These claims were assigned the following caption in the Eastern District of New York: James Bloor v. Federal Deposit Insurance Corporation, C.A. No. 78C565 (FDIC action). The claims against the FDIC in this action are identical to the claims against the other national banks in Bloor.

---

2/ The trustee stated that the purpose of this motion was to avoid protracted proceedings under 12 U.S.C. §94 concerning the proper venue for the claims against the FDIC. Franklin was headquartered in the Eastern District of New York before its failure.

Because the FDIC action appeared to involve common questions of fact with the MDL-290 actions, the Panel, pursuant to Rule 9, R.P.J.P.M.L., 65 F.R.D. 253, 259-60 (1975), entered an order conditionally transferring the FDIC action to the Southern District of New York for inclusion in the coordinated or consolidated pretrial proceedings occurring there. The FDIC opposes transfer, and the trustee favors transfer.

We find that the FDIC action involves common questions of fact with the actions previously centralized in the Southern District of New York and that transfer of the FDIC action to that district under Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

The FDIC argues that settlement negotiations are well underway which, if completed, could result in dismissal of the FDIC action. In the event the settlement negotiations break down, the FDIC continues, motions would be directed against the complaint for lack of specificity in the claims pled and for failure to plead venue properly. This action should remain in the Eastern District of New York to allow the settlement negotiations to be completed or, in the event the settlement negotiations break down, to allow the resolution of any motions that may be directed against the complaint, the FDIC asserts.

We find these arguments unpersuasive. The FDIC admits that the FDIC action and Bloor involve common questions of fact concerning the alleged collective activities of the banks and others in regard to IFC and the effect of those activities upon IFC, other creditors of IFC and other interested persons. Inclusion of the FDIC action in the coordinated or consolidated pretrial proceedings in the transferee district is therefore necessary in order to ensure the prevention of duplicative discovery and to eliminate the possibility of inconsistent pretrial rulings. See In re Investors Funding Corporation of New York Securities Litigation, supra, 437 F.Supp. at 1202. Of course, the FDIC need not participate in any pretrial proceedings that are unrelated to the FDIC's interests. See, e.g., Parts I and II, §§2.31, Manual for Complex Litigtion (rev.ed. 1977).

The trustee represents that settlement of the FDIC action is related to the IFC reorganization proceedings pending before Judge Bonsal. The effect of those proceedings on the FDIC action and the other actions in the multidistrict docket is best left to the discretion of Judge Conner, who has had an opportunity to become familiar with the nuances of these actions. Should the FDIC decide to file any motions directed against the complaint in the FDIC action, those motions can be presented to the transferee judge for resolution

See <u>In re Commonwealth Oil/Tesoro Petroleum Securities Litigation</u>, ___F.Supp.___,___ (J.P.M.L., filed September 20, 1978) (slip opinion at 11).

IT IS THEREFORE ORDERED that, pursuant to 28 U.S.C. §1407, the action entitled <u>James Bloor v. Federal Deposit Insurance Corporation</u>, E.D.N.Y., C.A.No. 78C565, be, and the same hereby is, transferred to the Southern District of New York and, with the consent of that court, assigned to the Honorable William C. Conner for coordinated or consolidated pretrial proceedings with the actions pending there.